Opinion
 

 KREMER, P. J.
 

 Defendant County of San Diego appeals a judgment after court trial favoring plaintiffs Elwyn Younker and Westfield Insurance Companies on their complaint to recover the amount paid in settlement of a claim against County employee Younker. We reverse the judgment.
 

 I
 

 Facts
 

 Elwyn Dean Younker was assistant fire chief of the Dehesa Volunteer Fire Department. Westfield was Younker’s personal automobile liability insurance carrier. Westfield’s policy also insured “any other person or
 
 *762
 
 organization but only with respect to his or its liability because of acts or omissions of an insured . . .
 

 On February 21, 1983, Younker responded to a report of a fire. While driving his personal vehicle toward the fire, Younker received a radio message to cancel his response. Younker headed home. En route Younker’s vehicle struck and injured minor pedestrian Aaron Allen.
 

 On February 23, 1983, the self-insured county admitted its responsibility to defend and indemnify Younker if a claim were filed on Aaron’s behalf.
 

 On April 1, 1983, Aaron’s mother, Kay Knight, filed a claim on his behalf against the county.
 

 On April 7, 1983, the county refused to defend or indemnify Younker. The county asserted Westfield was the provider of primary coverage for the matter.
 

 On May 31, 1983, the county rejected the claim filed by Knight.
 

 On July 11, 1983, Knight, Aaron and his brother Timothy sued Younker for negligence. (Super. Ct. San Diego County, No. 505972.)
 

 On February 22, 1984, the county rejected Younker’s request to defend or indemnify him in case number 505972.
 

 On November 15, 1985, the court in case number 505972 approved the minor’s compromise settlement agreement obligating Younker and Westfield to pay $43,329 in settlement of the case.
 

 On February 10, 1986, Younker and Westfield filed a claim with the county seeking reimbursement for expenses incurred in defending and settling case number 505972.
 

 On February 18, 1986, the county returned the claim without taking action.
 

 II
 

 Superior Court Proceedings
 

 On March 14, 1986, in San Diego Superior Court case number 560383, plaintiffs Younker and Westfield sued the county to recover the amount paid in settling the lawsuit against Younker in case number 505972 plus attorney
 
 *763
 
 fees and expenses. (Gov. Code, §§ 825.2, 996.4.)
 
 [1]
 
 Plaintiffs alleged they were forced to incur expenses because the county violated its statutory duty to defend and indemnify its employee Younker.
 

 In September 1989 the matter was argued to the superior court on a stipulated statement of facts.
 
 [2]
 
 The parties agreed the issue for court resolution was whether recovery by plaintiffs was barred under
 
 Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co.
 
 (1986) 184 Cal.App.3d 163 [229 Cal.Rptr. 57].
 

 After trial the court entered judgment favoring Westfield against the county for $59,382.26 representing costs of settlement of case number 505972 and attorney fees.
 
 [3]
 
 The county appeals.
 

 Ill
 

 Discussion
 

 Asserting Westfield’s policy extended coverage to the county as employer of Westfield’s named insured Younker, the county contends West-field’s obligation prevailed over the county’s general obligation to defend and indemnify for Younker’s conduct. Plaintiffs contend the fact Younker obtained his own automobile liability insurance policy should not permit the county to avoid its Government Code obligations. We conclude the superior court should have entered judgment for the county.
 
 Pacific Indem. Co.
 
 v.
 
 American Mut. Ins. Co., supra,
 
 28 Cal.App.3d 983, relied upon by plaintiffs and the superior court, is distinguishable.
 
 Government Employees Ins. Co.
 
 v.
 
 *764
 

 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d 163, is persuasive and controlling.
 

 As plaintiffs’ counsel conceded at trial, the facts here are virtually “identical” to those in
 
 Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d 163. In that case a teacher driving her private vehicle struck and injured a man while acting within the scope of her employment by a school district. The injured party sued the teacher. Through attorneys retained by her private insurer (GEICO), the teacher demanded the district defend and indemnify her under section 825.
 
 [4]
 
 The district was also an insured under the GEICO policy. The district asserted GEICO had the duty to defend and indemnify the teacher and the district to the full extent of its policy limits. The district also asserted its liability was purely excess over the GEICO policy. After settling with the injured party for its policy limits, GEICO sued the district and its insurer, Gibraltar, to recover the amount of the settlement and attorney fees expended. The superior court granted summary judgment favoring the district and Gibraltar. The appellate court affirmed the summary judgment.
 

 A
 

 County Was an Insured Under Westfield Policy
 

 Insurance Code section 11580.1, subdivision (b)(4), requires every motor vehicle liability policy must provide coverage for anyone legally responsible for use of the vehicle described in the policy.
 
 [5]
 

 In
 
 Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d 163, in compliance with Insurance Code section 11580.1, subdivision (b)(4), the GEICO policy defined as “persons insured”—in addition to its named insured—“ ‘[a]ny other person or organization for his or its liability because of the acts or omissions of any insured. . . .’”
 
 (Id.
 
 at p. 171.) The appellate court noted the teacher was the named insured under
 
 *765
 
 the GEICO policy and the district was a “person or organization” liable because of the teacher’s “acts or omissions” in operating her vehicle at the time of the accident. Thus, the appellate court concluded the district itself was an insured under the GEICO policy.
 
 (Id.
 
 at p. 171.) Similarly, the county here was an insured under the Westfield policy.
 

 As statutorily required under Insurance Code section 11580.1, subdivision (b)(4), the Westfield automobile liability policy defined as “persons insured” —in addition to the named insured—“any other person or organization but only with respect to his or its liability because of acts or omissions of an insured . . . .” Under the Westfield policy Younker was the named insured and the county was clearly a “person or organization” liable because of Younker’s “acts or omissions” in operating his vehicle in the scope of his employment at the time of the accident.
 
 (Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d at p. 171.)
 

 Thus, Westfield was the insurer not only of public employee Younker but also of the county itself. The Westfield policy coverage was an asset of the county as well as of Younker.
 
 (Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d at p. 168.)
 
 [6]
 

 B
 

 Westfield’s Contractual Obligation to County Is Not Excused by County’s Statutory Obligations to Defend and Indemnify Younker
 

 The county was statutorily obligated to defend and indemnify Younker with respect to Aaron’s claim. (§§ 825, 825.2, 825.4, 995, 996, 996.4.)
 
 [7]
 
 
 *766
 
 Plaintiffs contend the county refused to defend or indemnify Younker in violation of its statutory obligations. However, the county satisfied those statutory obligations through the Westfield policy.
 

 In
 
 Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d 163, the appellate court stated since the teacher was acting within the scope of her employment at the time of the accident the district was obligated to defend and indemnify her.
 
 (Id.
 
 at p. 166.) The appellate court noted when a public employee requests defense and indemnification, sections 825, 825.4, and 996.4 affirmatively require the entity to pay for defense of the lawsuit and to pay any judgment or settlement against the employee.
 
 (Id.
 
 at pp. 166-167.) However, the appellate court concluded nothing in those statutes “prevents the public entity from satisfying its obligation to pay any such judgment, compromise, settlement or defense costs through funds available to it through
 
 any
 
 insurance policy. That is so whether the public entity is the named insured in such policy or merely has that coverage available to it as an additional insured under such policy. [Citation.]”
 
 (Id.
 
 at p. 167, italics in original.)
 

 Plaintiffs contend the Government Code goals of protecting public employees from financial burdens resulting from third party claims and motivating public employees to perform their jobs zealously require the county to bear the entire loss. Plaintiffs assert permitting the county to use the proceeds of a policy purchased with employee Younker’s premiums contravenes statutory prohibitions against a public entity seeking indemnity from its employee. (E.g., §§ 825.4, 996.) However, plaintiffs fail to distinguish between employee Younker and his insurer Westfield.
 
 (Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d at p. 168.)
 

 In
 
 Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d 163, the appellate court rejected GEICO’s contention that allowing the school district to look to its employee’s GEICO policy would improperly require the teacher rather than her insurer GEICO to bear the burden of the loss.
 
 (Id.
 
 at p. 166.) The appellate court stated: “The satisfaction of District’s obligation to its employee does not depend upon which of the two policies paid the loss. Nor does it depend upon which of the two insureds paid the premium for the insurance policy used to satisfy the judgment or pay the compromise or settlement.”
 
 (Id.
 
 at p. 168.) Similarly, satisfaction of the county’s obligation to Younker does not depend on whether the loss was paid by Westfield or by the county directly as
 
 *767
 
 self-insurer. Nor does it depend upon the fact Younker may have paid the premium for the policy used to pay the settlement. Further, because the county had an asset—the Westfield policy—available to pay the settlement, Younker did not “ ‘foot the bill.’ ”
 
 (Ibid.)
 
 Nothing in the record suggests Younker incurred any financial burden beyond the premium already paid. Plaintiffs’ contentions Younker was subjected to higher premiums, cancellation or difficulty in finding coverage are speculation without evidentiary support.
 
 (Id.
 
 at pp. 168-169.)
 

 In sum, the county’s obligation to Younker was entirely statutory. Where, as here, a public employee is fully covered, there is no proscription against the public entity satisfying its statutory obligation by availing itself of insurance designating its employee as the named insured.
 
 (Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d at p. 172.) Thus, the county properly looked to the Westfield policy to comply with its statutory obligations to Younker. Westfield had a clear duty under the terms of its policy to pay on behalf of the county as well as on behalf of Younker the amount of the settlement and the attorney fees incurred in defending Aaron’s claim against Younker. The superior court erred in concluding Westfield was entitled to reimbursement from the county.
 
 [8]
 

 C
 

 Plaintiffs’ Case Authority Is Distinguishable
 

 Plaintiffs’ reliance on
 
 Pacific Indem. Co.
 
 v.
 
 American Mut. Ins. Co., supra,
 
 28 Cal.App.3d 983, is misplaced. The facts of that case are distinguishable from the situation here. Pacific Indemnity insured the Regents of the University of California and its employees. American Mutual was the private insurer of a physician employed by the Regents. The superior court declared Pacific Indemnity had no rights against American Mutual for payment of a portion of the liability Pacific Indemnity incurred and discharged in defending and settling a malpractice action against the physician and the Regents.
 
 *768
 
 Pacific Indemnity had asserted entitlement to pro rata contribution from American Mutual under general principles of insurance law. American Mutual contended, and the superior court agreed, the Government Code provisions involving defense and indemnification of public employees rendered Pacific Indemnity, as insurer of the public employer, solely liable and exonerated American Mutual, as insurer of the public employee, from any liability to his employer’s insurer.
 

 In affirming the declaratory judgment in
 
 Pacific Indem. Co.
 
 v.
 
 American Mut. Ins. Co., supra,
 
 28 Cal.App.3d 983, the appellate court concluded Pacific Indemnity had no rights under the subrogation clause “because any attempt by the Regents to secure contribution from its employee or his personal insurer would violate the legislative policy which gave rise to the provisions [of the Government Code involving defense and indemnification of public employees].”
 
 (Id.
 
 at p. 992.) The appellate court stated Pacific Indemnity could secure contribution only “if there is other insurance covering the obligation of the Regents.”
 
 (Ibid.)
 
 No such other insurance existed. The appellate court specifically noted “there is neither concession nor contract provision which renders the employee’s insurance available for the satisfaction of the public entity’s obligation to the victim or its obligation to its employee.”
 
 (Id.
 
 at p. 995.)
 
 [9]
 

 In
 
 Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d 163, the appellate court properly distinguished
 
 Pacific Indem. Co.
 
 v.
 
 American Mut. Ins. Co., supra,
 
 28 Cal.App.3d 983. The appellate court stated: “The
 
 Pacific Indemnity
 
 case held that the insurer of the Regents of the University of California was not entitled to a contribution from the insurer of a physician employed by the Regents as to the costs of defending and settling a malpractice arising out of the physician’s employment where the physician’s policy contained no provision extending coverage to an employer.”
 
 (Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d at p. 175.)
 

 Under the circumstances here, the Westfield policy extended coverage to the county as Younker’s employer. Thus,
 
 Pacific Indem. Co.
 
 v.
 
 American Mut. Ins. Co., supra,
 
 28 Cal.App.3d 983, is not on point.
 
 Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d 163, is persuasive. The judgment here must be reversed.
 

 
 *769
 
 Disposition
 

 The judgment is reversed. The superior court is directed to enter a new judgment favoring the county. The county is entitled to costs on appeal.
 

 Wiener, J., and Froehlich, J., concurred.
 

 [1]
 

 Government Code section 825.2 provides in relevant part “if an employee or former employee of a public entity pays any claim or judgment against him, or any portion thereof, that the public entity is required to pay under Section 825, he is entitled to recover the amount of such payment from the public entity.”
 

 Government Code section 996.4 provides: “If after request a public entity fails or refuses to provide an employee or former employee with a defense against a civil action or proceeding brought against him and the employee retains his own counsel to defend the action or proceeding, he is entitled to recover from the public entity such reasonable attorney’s fees, costs and expenses as are necessarily incurred by him in defending the action or proceeding if the action or proceeding arose out of an act or omission in the scope of his employment as an employee of the public entity . . . .”
 

 All statutory references are to the Government Code unless otherwise specified.
 

 [2]
 

 The parties stipulated Younker was a public employee under section 810.2; Aaron’s claim arose out of an act within the scope of Younker’s public employment under section 825; and between February and August 1983 Younker under section 825 asked the county to defend and indemnify him.
 

 [3]
 

 In its memorandum decision the superior court rejected the reasoning of
 
 Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d 163. The court instead found persuasive the analysis in
 
 Pacific Indem. Co.
 
 v.
 
 American Mut. Ins. Co.
 
 (1972) 28 Cal.App.3d 983 [105 Cal.Rptr. 295].
 

 [4]
 

 Section 825 provides in relevant part: “If an employee or former employee of a public entity requests the public entity to defend him against any claim or action against him for an injury arising out of an act or omission occurring within the scope of his employment as an employee of the public entity and such request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.”
 

 [5]
 

 Insurance Code section 11580.1, subdivision (b)(4), requires every automobile liability insurance policy contain a provision “affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured . . . .”
 

 [6]
 

 In
 
 Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d 163, the appellate court concluded: “Under the circumstances of this case, under the statutory language and under the GEICO policy provisions, the GEICO policy coverage was an asset of the District as well as of [the employee].”
 
 (Id.
 
 at p. 168.)
 

 [7]
 

 Subject to exceptions not relevant here, section 825.4 provides “if a public entity pays any claim or judgment against itself or against an employee or former employee of the public entity, or any portion thereof, for an injury arising out of an act or omission of the employee or former employee of the public entity, he is not liable to indemnify the public entity.”
 

 Subject to exceptions not applicable here, section 995 provides in relevant part: “[U]pon request of an employee or former employee, a public entity shall provide for the defense of any civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity.”
 

 Section 996 provides: “A public entity may provide for a defense pursuant to this part by its own attorney or by employing other counsel for this purpose or by purchasing insurance which requires that the insurer provide the defense. All of the expenses of providing a defense
 
 *766
 
 pursuant to this part are proper charges against a public entity. A public entity has no right to recover such expenses from the employee or former employee defended.”
 

 [8]
 

 The county’s obligation under section 825 was not that of an insurer.
 
 (Government Employees Ins. Co.
 
 v.
 
 Gibraltar Casualty Co., supra,
 
 184 Cal.App.3d atp. 174.) However, the county was self-insured. Under the county’s board of supervisors policy number B-41, no automobile liability coverage was offered for the use of a volunteer’s private automobile “except when within the scope of the volunteer’s work activities which are sponsored and under the direct supervision of the County and then only in excess to that insurance which the volunteer personally carries on his or her automobile.” Thus, the county as self-insurer expressly afforded at most merely excess insurance to that afforded by Westfield.
 

 Further, even if the county’s self-insurance constituted an automobile liability insurance policy for purposes of Insurance Code sections 11580.8 and 11580.9, Westfield’s coverage was primary under those statutes because Younker’s vehicle was the described vehicle in the Westfield policy. The settlement here apparently did not exceed the Westfield policy’s limits.
 

 [9]
 

 In
 
 Pacific Indem. Co.
 
 v.
 
 American Mut. Ins. Co., supra,
 
 28 Cal.App.3d 983, the appellate court also distinguished the decision in
 
 Oxnard Union High Sch. Dist.
 
 v.
 
 Teachers Ins. Co.
 
 (1971) 20 Cal.App.3d 842 [99 Cal.Rptr. 478]: “That decision may be distinguished from this case on the ground that there the employee’s insurance admittedly covered the employer who is primarily liable under, the statutes. In this case, however, there is nothing in the certificate issued by defendant insurer which purports to cover the Regents.” (28 Cal.App.3d at pp. 994-995.)